## Anderson et al. v. Aetna Life Ins. Co.

November 19, 1946.

J. D. Ruark and King & Flournoy for appellants.

E. R. Morton for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

John N. Anderson died April 3, 1944, a resident of Union county. On January 25, 1930, the Aetna Life Insurance Company issued to Mr. Anderson a life insurance policy in the principal sum of $15,210 in consideration of Anderson's agreement to pay annually a premium of $1,435.82. The beneficiary agreement incorporated in the policy provided in part as follows:

"The net sum payable by the Company under this policy by reason of the death of the insured shall be payable as follows:

"If Nora A. Anderson, wife of the insured, survives the insured, said net sum shall be payable in accordance with Mode 4 in monthly installments for a fixed period of Ten (10) years and for as long thereafter as said wife shall live—each installment to be payable as it becomes due to said wife if then living, otherwise to John N. Anderson, Jr. and William A. Anderson, sons of the insured, equally, or the survivor; if neither is then living the commuted value of any unpaid installments for the period of Ten (10) years certain to be payable in one sum to the executors or administrators of the last surviving payee."

It further provided that if neither Mrs. Anderson nor either of the sons survived the insured the net amount of $15,210 should be paid to the executors, administrators or assigns of the insured. Mode 4 provides for the

payment in advance of equal annual, semiannual, quarterly or monthly installments for a fixed period of years and for as long thereafter as the payee lives. The amount of the installment is based on the attained age of the payee at the death of the insured and is shown in Table C, which is set out in the policy. Mrs. Nora A. Anderson was 74 years of age at the time of her husband's death, and the amount of the monthly installment payable to her for the fixed period of ten years and for as long thereafter as she lives, as shown by Table C, is $129.74. The insurer offered to pay that amount, but Mrs. Anderson refused to accept it, and demanded $150 on the theory that the application signed by the insured and the policy specifically provided for $150. She brought this action against the Aetna Life Insurance Company to require it to pay to her during her life the sum of $150 a month and upon her death, provided she died within the ten year period following her husband's death, equally and jointly to her two sons, William A. Anderson and John N. Anderson, Jr., for the remainder of the ten year period. She alleged in her petition that the insurer agreed in its policy of insurance to pay the proceeds of the policy to Nora A. Anderson, wife of the insured, at the rate of $150 a month for a fixed period of ten years and for as long thereafter as she should live. She also alleged that on February 2, 1938, the insured received a letter from Mr. G. Russell Churchell, a duly authorized and acting general agent for the defendant company which reads:

"I find that this policy will pay Mrs. Anderson $150.00 per month for ten (10) years guaranteed and as long as she lives thereafter and regret exceedingly that I made the error several years ago in my previous letter."

She pleaded estoppel. The defendant in its answer, after denying the affirmative allegations of the petition, averred that the premiums to be paid by the insured and the amounts to be received by the beneficiary were to be computed according to Mode 4 and Table C of the policy, and that according to the terms of the policy the amount of installments to be paid to the beneficiary was fixed by said Mode 4 and could not be correctly estimated until the time of the insured's death. It was further averred that the letter referred to in the petition as having been

written by G. Russell Churchell was, in fact, addressed to M. B. Hammack, Jr., of Morganfield, Kentucky, and not to the insured, was written without the authority or knowledge of the defendant, and that Churchell was never authorized by the defendant to make or construe contracts for it or to make any agreement or alter the contract with the insured. The answer set out paragraph 16 of the policy, which reads:

"All agreements made by the Company are signed by its President, Vice-President, Secretary, Assistant Secretary, Treasurer, or Assistant Treasurer. No other person can alter or waive any of the conditions of this policy, extend the time for paying a premium or make any agreement which shall be binding upon the Company."

The answer contained this concluding paragraph:

"The defendant further states that a part of Paragraph 7 of the deceased's application and written into the application by the deceased, reads as follows: 'Payable $150.00 per month for ten years certain and continuous during life of my wife Mrs. Nora A. Anderson if she should not live 10 years, then the remainder of the ten years to be paid in like manner to my two sons John N. Anderson, Jr., & William A. Anderson.' That said provision in said application was eliminated and stricken from said application by this defendant before said contract was executed and there appears on said paragraph marks eliminating said provision and also there is stamped across said paragraph and provision in ink, the following notation: 'As shall be provided in the policy,' all of which indicated the purpose of this defendant to eliminate and cancel said provision. That said provision was impossible of performance because under the terms of the policy the monthly installments payable by this defendant could not be ascertained until the death of the insured * * *."

The defendant filed with the answer as exhibits the original application of John N. Anderson, a photostatic copy of application correction blank, a copy of the agency contract between the defendant and G. Russell Churchell dated January 30, 1933, and a copy of the letter of G. Russell Churchell dated February 2, 1938, addressed to M. B. Hammack, Jr. In a reply it was alleged that the

contents of the letter of G. Russell Churchell to M. B. Hammack, Jr., were communicated to John N. Anderson, who relied on the statements contained in the letter and continued to pay the premiums on the policy until his death. It was admitted that there was stamped across paragraph 7 of the insured's application the notation "As shall be provided in policy," but it was alleged that this notation was stamped on the application after same had been signed by the decedent without his knowledge or consent, and that the notation was so dim and indistinct on the photostatic copy of the application, which was attached to the policy, that it was not legible and for that reason the decedent, John N. Anderson, did not know that the notation had been stamped thereon. The demurrer to the petition was extended to the reply and sustained. The plaintiffs declined to plead further, their petition was dismissed, and they have appealed.

The briefs of both the appellants and the appellee are devoted in large measure to a discussion of the authority of insurance agents, and general agents in particular, to waive the provisions of an insurance policy. It is appellants' contention that appellee is bound by the construction placed upon the policy in 1938 by its agent G. Russell Churchell, even though such construction was erroneous. The record discloses that Churchell had authority only to appoint and train agents, to procure applications for life insurance, and to receive premiums. The applications were forwarded to the home office of the company where they were passed upon and the policies issued. Churchell had little, if any, more authority with respect to policies than a soliciting agent, but, be that as it may, no agent has authority to change the consideration of a contract of insurance after it has been executed unless he has been expressly vested with such authority by the company. Prudential Life Insurance Co. of America v. Jenkins, 290 Ky. 802, 162 S. W. 2d 791; Connecticut Life Insurance Co. v. Roberts, 266 Ky. 534, 11 S. W. 2d 148. Churchell had no authority to conclude contracts of insurance or to issue and deliver policies. He was without authority, actual or apparent, to waive contract provisions or to bind the company by a statement as to construction of a contract. The insured had notice from the policy that only general officers of the company had such authority.

In the application signed by John N. Anderson the amount of insurance requested was $15,210. Mr. Anderson, in answer to question 4-a, applied for a monthly income policy, and stated that he desired a monthly income of $150. In answer to question 4-c the premium was stated to be $776, and in answer to question 5-a Mrs. Nora A. Anderson was named beneficiary. Upon receipt of the application the company sent to Mr. Anderson an application correction blank, which contained the following corrections:

"The answer to question No. 4-a in regard to Plan of Insurance should read: Non-Participating Life, Class B.

"The answer to question No. 4-c in regard to Premium should read: $1435.82 annually.

"The answer to question No. 5-a in regard to beneficiary should read: As shall be provided in the policy."

After the correction blank had been signed by Mr. Anderson the company drew a line with pen and ink through the answers to questions 4-a, 4-c, and 5-a in the application, and substituted therefor the answers in the application correction blank. Under the heading "Enter here any additional information or special features," which followed question 7 on the application, this appeared:

"Payable $150.00 per mo. for 10 yrs. certain & continuous during life of my wife Mrs. Nora A. Anderson if she should not live 10 yrs. then the remainder of the 10 yrs. to be paid in like manner to my two sons John N. Anderson Jr. & William A. Anderson."

Lines were drawn through this statement, and the words "As shall be provided in policy" were stamped across it. Immediately under this statement at the bottom of the application this was written: "Answers to questions 4-a, 5-a, 4-c, special features changed." As thus altered, a photostatic copy of the application was made and attached to the policy, which was delivered to the insured. It is appellants' contention that the words "As shall be provided in policy," stamped in the special features clause, are not legible on the photostatic copy of the application, and furnished no notice to the insured that an alteration had been made. The words are not as

clear and distinct as they should be, but they are legible and the insured's attention was directed to them by the statement at the bottom of the application, which is clear and distinct. That statement reads, ''Answers to questions 4-a, 5-a, 4-c, special features changed,'' and was notice to the insured that the special features clause had been changed. The policy itself provided in clear and unmistakable language that the amount of the monthly installments payable to the beneficiary could not be ascertained until the death of the insured, and was to be determined by the attained age of the payee at that time, as set out in Table C. Mr. Anderson desired a policy of insurance which would pay to his wife, after his death, the sum of $150 a month for a period of ten years certain, or during her life if she survived the ten year period. Under the plan of insurance selected by the parties, the exact amount of the installments could not be fixed in advance. Under the policy issued by the company the monthly installments could be more or less than $150, depending on the age of Mrs. Anderson at the time of the death of her husband. All of the changes in the application were made to conform to the policy, which could be and was issued by the company.

We find no ground for a misunderstanding of the terms of the policy, and the judgment is affirmed.