Marcella A. MacKENZIE, Plaintiff-Appellant,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.

No. 18801.

United States Court of Appeals Sixth Circuit.

June 3, 1969.

Herman E. Frick, Louisville, Ky. (Felix J. Sanders, Jr., Louisville, Ky., on the brief), for appellant.

Thomas W. Bullitt, Louisville, Ky. (Lonnie O. Grigsby, Louisville, Ky., on the brief), for appellee.

Before PHILLIPS, McCREE, and COMBS, Circuit Judges.

COMBS, Circuit Judge.

Plaintiff-appellant was beneficiary under an insurance policy written by defendant-appellee on the life of her decedent, Jerome F. MacKenzie. After Mr. MacKenzie's death in August, 1966,[1] Prudential refused to pay over the proceeds of the policy, contending that MacKenzie had in legal effect made material misrepresentations concerning his health when he accepted delivery of the policy. This action was brought in state court in Louisville, Kentucky, but was removed to the United States District Court by reason of diversity of citizenship. The district court granted summary judgment for the defendant, and the plaintiff appeals. We affirm.

Since all the relevant facts in this case are undisputed or have been resolved in favor of plaintiff the case was properly disposed of under Rule 56, Federal Rules of Civil Procedure. Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425 (6th Cir. 1962).

On August 10, 1964, MacKenzie made initial application with Prudential for a $40,000 decreasing term life insurance policy. The application was completed and signed by MacKenzie in the presence of Dr. Robert McGrath, who had examined MacKenzie at Prudential's request.

The application called for MacKenzie to disclose whether he had ever been treated for or had any known indication

1. The cause of death was pulmonary embolus which developed after decedent was injured in a fall from a bicycle.

of "heart trouble or murmer, high blood pressure, or abnormal pulse?" To this, he answered, "No." He was also asked to disclose any visits to physicians in the preceding five years. In answering this question, MacKenzie listed three visits to doctors, two of which were for routine physical examinations and the other for removal of a cyst. The application provided that no insurance would take effect unless "all of the answers to the question in Part 1 and Part 2 of the application continue to be true and complete answers as of the date of the delivery of the policy * * *."

So far as is known, the above representations were true when MacKenzie signed the application. Dr. McGrath found his blood pressure to be 140/78 (within normal limits). However, sometime before September 17, 1964, the date the policy was delivered, MacKenzie suffered a chest bruise. This was apparently a minor injury, but he sought medical assistance from another doctor on September 16. Upon examining MacKenzie, the doctor found that his blood pressure was 170/100 (higher than normal). He was given a prescription for Naturetin, a diuretic prescribed to decrease blood pressure, and advised to get a complete check-up.

When the policy was delivered to MacKenzie by Prudential's agent on the evening of September 17, he said nothing about his recent visit to a doctor or the increase in his blood pressure. He did have the policy decreased to $20,000 because of anticipated difficulty in paying premiums, but no further statement was made concerning the application.[2]

The affidavits and answers to interrogatories appended to Prudential's motion for summary judgment establish without contradiction that Prudential accepted the risk in reliance upon the truthfulness of the answers in the application and that, if MacKenzie had volunteered the truth about his blood pressure, the policy would not have been delivered.

One of Prudential's underwriters stated in interrogatories that, if the change in MacKenzie's condition had been divulged, the company either would have refused to issue the policy or would have increased the premium.

 Under Kentucky law, which under the *Erie* doctrine is controlling here, misrepresentations sufficient to prevent recovery on an insurance policy must be material to the risk *or* fraudulently made. Ky.Rev.Stat. § 304.656 (1962); Mills v. Reserve Life Ins. Co., Ky., 335 S.W.2d 955 (1960); The Maccabees v. Covert, 302 Ky. 481, 194 S.W.2d 498 (1946); Prudential Ins. Co. of America v. Lampley, 297 Ky. 495, 180 S.W.2d 399 (1944). Prudential contends and we hold that, since the increase in the blood pressure reading was obviously material, no fraud need be shown. The Kentucky court held in *Maccabees*, supra, that "[t]he standard by which materiality is to be determined is the action which insurance companies generally would have taken on the application, when acting in accordance with their usual practice and usage, if the truth had been told." See also Northwestern Mut. Life Ins. Co. v. Yoe's Ex'r, 283 Ky. 406, 141 S.W.2d 554 (1940); Commonwealth Life Ins. Co. v. Goodknight's Adm'r, 212 Ky. 763, 280 S.W.2d 123 (1926).

 So, the decisive question is whether MacKenzie had a duty to divulge his change in health the breach of which would amount to a material misrepresentation. The Supreme Court has spoken on this question in Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 316–317, 48 S.Ct. 512, 513, 72 L.Ed. 895 (1928):

"[E]ven the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the

---

**2.** Prudential's agent who delivered the policy, Irvin G. Walter, said that he asked about health changes, but this was contradicted by Mrs. MacKenzie. For the purpose of this appeal, we construe the facts in favor of appellant.

company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, [cases cited] or, if a policy has been issued, it has a valid defense to a suit upon it." [Citations omitted.]

Although the Kentucky Court of Appeals has not considered this specific issue, the rule of *Stipcich* has received rather universal acceptance—see 43 Am. Jur.2d Insurance § 733 (1969)—and we have no reason to believe Kentucky would not adhere to it. See New York Life Ins. Co. v. Gay, 36 F.2d 634 (6th Cir. 1929). Accordingly, Mr. MacKenzie's failure to divulge his high blood pressure reading must be regarded as a material misrepresentation sufficient to void the policy.

Judgment affirmed.